No. 26-30653

# In the United States Court of Appeals for the Fifth Circuit

JOHNNIE RUSHING,
*Plaintiff-Appellee*,

v.

STEVEN E. SANDERS, IN HIS OFFICIAL CAPACITY AS EAST BATON ROUGE PARISH WARD 3, DISTRICT 2 JUSTICE OF THE PEACE,
*Defendant-Appellant*

From the United States District Court
Middle District of Louisiana
No. 25-CV-168, Hon. John W. deGravelles

## APPELLANT'S OPENING BRIEF

ELIZABETH B. MURRILL
Attorney General of Louisiana

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 406-1864
AguinagaB@ag.louisiana.gov

J. BENJAMIN AGUIÑAGA
Solicitor General

TANIKA L. STARKS
Assistant Attorney General

*Counsel for Defendant-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required here because, under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellant—as a "governmental" party—need not furnish a certificate of interested persons.

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

## STATEMENT REGARDING ORAL ARGUMENT

The Court has scheduled oral argument for December 2, 2026.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS........................................ii

STATEMENT REGARDING ORAL ARGUMENT................................. iii

TABLE OF AUTHORITIES................ **Error! Bookmark not defined.**

INTRODUCTION.......................................................................1

JURISDICTIONAL STATEMENT..........................................................5

STATEMENT OF ISSUES PRESENTED ...............................................6

STATEMENT OF THE CASE ......................................................7

A. Factual Background........................................................8

B. District Court Motions and Decision......................................14

SUMMARY OF THE ARGUMENT..............................................17

STANDARD OF REVIEW.....................................................19

ARGUMENT..................................................................20

I. THERE IS NO ARTICLE III JURISDICTION...........................................20

A. Rushing Lacks Article III Standing. .......................................20

B. Even If Rushing Had Standing, This Case Is Moot.................23

II. THE DISTRICT COURT ERRONEOUSLY GRANTED CLASS CERTIFICATION...........................................................................30

A. The Class Is Empty. ..................................................32

B. Even If the Class Were Not Empty, Rushing Is Atypical and Inadequate. .......... 32

C. The Class Is Unlawfully Overbroad. .......... 34

CONCLUSION .......... 37

CERTIFICATE OF SERVICE .......... 39

CERTIFICATE OF COMPLIANCE .......... 40

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 2, 20, 21, 22

*Cooperative Dist. of Hou. Cnty-Country Crossing Project v. Tyson*,
2011 WL 336466 (M.D. Ala. Jan. 31, 2011) .......... 29

*El Paso Cnty. v. Trump*,
982 F.3d 332 (5th Cir. 2020) .......... 20

*Grant ex rel. Family Eldercare v. Gilbert*,
324 F.3d 383 (5th Cir. 2003) .......... 3, 26, 27, 31

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .......... 2, 21, 22, 23

*Flecha v. Medicredit, Inc.*,
946 F.3d 762 (5th Cir. 2020) .......... 20, 31

*Fontenot v. McCraw*,
777 F.3d 741 (5th Cir. 2015) .......... *passim*

*Freedom From Religion Found., Inc. v. Abbott*,
58 F.4th 824 (5th Cir. 2023) .......... 20

*Golan v. Veritas Entertainment, LLC*,
788 F.3d 814 (8th Cir. 2015) .......... 33

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) .......... 36

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) .......... 33

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008) .......... 36

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) .......... 35

*Judicial Watch, Inc. v. Nat'l Energy Policy Development Grp.*,
219 F. Supp. 2d 20 (D.D.C. 2002) .......... 28

*Mims v. Stewart Title Guar. Co.*,
590 F.3d 298 (5th Cir. 2009) .......... 19

*Mirabelli v. Bonta*,
607 U.S. 492 (2026) .......... 35

*In re Monumental Life Ins.*,
365 F.3d 408 (5th Cir. 2004) .......... 34, 37

*New York v. Trump*,
__ F. Supp. 3d __, 2026 WL 2858727 (S.D.N.Y. Sept. 23, 2026) .......... 29

*Odonnell v. Salgado*,
913 F.3d 479 (5th Cir. 2019) .......... 29

*Patton v. Fitzhugh*,
131 F.4th 383 (6th Cir.) .......... 15, 25

*Refuge & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin*,
174 F.4th 81 (D.C. Cir. 2026) .......... 37

*Scott v. Vital Core Strategies*,
2025 WL 471110 (5th Cir. Feb. 12, 2025) .......... 28

*Swales v. KLLM Transport Servs., L.L.C.*,
985 F.3d 430 (5th Cir. 2021) .......... 36

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 35

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) .......... 37

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 35

*Will v. Mich. Dep't of State Police*,
491 U.S. 58 (1989) .......... 28

**Statutes**

28 U.S.C. § 1331 .......... 5

**Other Authorities**

Act No. 950, 2026 Leg. Reg. Sess .......... 13

Fed. R. App. P. 43 .......... 30

Fed. R. Civ. P. 23 .......... *passim*

Fed. R. Civ. P. 25 .......... 29, 30

## INTRODUCTION

In Louisiana, justices of the peace often handle eviction matters. The Southern Poverty Law Center (SPLC) seeks to challenge the handling of those matters on various constitutional grounds. One justice of the peace, Defendant Steven Sanders, is SPLC's target in this case.

SPLC first attempted to carry out its attack through a putative class representative named Latoria George, until George stopped communicating with SPLC and was ultimately dismissed for failure to prosecute her case. SPLC next attempted to do so through Appellee, Johnnie Rushing. But Rushing intentionally mooted her own eviction matter. Days before she filed this suit, she already had keys to a new home and had told her landlord that she was moving—and in fact, she moved out of her landlord's home some 24 hours after she filed this suit.

Nonetheless, the district court indulged Rushing's wish to litigate for "fairness for other people who are facing eviction litigation." ROA.1250. So, the district court certified a class of virtually anyone (even the unconceived, the unborn, and those who currently live in Australia) who might one day find themselves in Defendant's court for an eviction

proceeding—and the district court named Rushing as its sole class representative.

This suit was frivolous the day it was filed and it is frivolous today. This Court should decertify the class and dismiss this case on three grounds.

*First*, Rushing does not have Article III standing. When she filed suit, she faced no "actual or imminent" injury from the challenged Louisiana eviction laws because she was already holding the keys to her new home. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). She would thus never set foot in Defendant's court or be evicted. She also has admitted that she stands to gain nothing from this suit, hence her stated desire to be a champion for others. She cannot claim standing on that basis. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) ("The injury in fact requirement prevents the federal courts from becoming a 'vehicle for the vindication of the value interests of concerned bystanders.'" (citation omitted)). And that ends this case.

*Second*, even if Rushing had Article III standing, everyone agrees that this case is moot: Rushing is subject to no eviction proceedings because she unilaterally mooted them by leaving her landlord's home.

Rushing and the district court tried to overcome that mootness problem with the exception for disputes that are inherently transitory. But this Court has squarely foreclosed invocation of that exception where, as here, a named plaintiff had "no certification motion ... pending" when his claims became moot. *Fontenot v. McCraw*, 777 F.3d 741, 751 (5th Cir. 2015). This Court also has squarely foreclosed invocation of that exception where, as here, the plaintiff's "*own* actions, not the [defendant's], mooted his claim." *Grant ex rel. Family Eldercare v. Gilbert*, 324 F.3d 383, 390 n.11 (5th Cir. 2003). And all this says nothing of the larger mootness problem: This official-capacity suit (and the class definition) targets an office that no longer exists because the Louisiana Legislature recently restructured the justice of the peace system. Basic mootness principles thus equally end this case.

*Third*, even if Article III were no barrier, Rushing plainly does not satisfy the Rule 23 class-certification requirements. She cannot satisfy the numerosity requirement because her class is entirely empty after the restructuring of justice of the peace districts. She cannot satisfy the typicality and adequacy requirements given the insurmountable justiciability defenses against her claims. And she cannot satisfy the

basic ascertainability, class-definition, and narrow-tailoring requirements. Her certified class includes currently unknown individuals who may find themselves in the class decades down the road just because they happen to appear in Defendant's court—and, by the district court's own admission, approximately half of the class will never suffer any constitutional injury of the sort challenged in this case.

This case overflows with absurdities and violations of basic legal principles. The Court should not tolerate them. It should decertify the class and render judgment dismissing this case.

## JURISDICTIONAL STATEMENT

The district court has federal question jurisdiction under 28 U.S.C. § 1331, but it lacks Article III jurisdiction, *see infra* Argument Section I. The district court issued its order granting class certification on September 25, 2026. ROA.2040. On October 29, 2026, this Court granted Defendant's request for permission to appeal under Federal Rule of Civil Procedure 23(f). ECFs 1, 5-1.

## STATEMENT OF ISSUES PRESENTED

1. Whether the district court lacks Article III jurisdiction.
2. Whether the district court violated Rule 23 in granting class certification.

## STATEMENT OF THE CASE

The facts relevant to this appeal are straightforward. SPLC filed this putative class action in February 2025 through a plaintiff named Latoria George against a single justice of the peace, Defendant-Appellant Steven Sanders. ROA.21. SPLC seeks to challenge the structure and operations of Louisiana's justice of the peace system—particularly as that system relates to eviction proceedings. In particular, SPLC's original complaint claimed that justices of the peace have unlawful financial interests in eviction proceedings that violate due process, and that certain appeals procedures violate equal protection principles. ROA.55-58. SPLC subsequently moved to withdraw as counsel for George because she stopped communicating with SPLC, ROA.717-19; ROA.11 (ECF 38), and the district court dismissed George from the case, ROA.1897-99.

As a result, this case—and this appeal—is solely about the one remaining named plaintiff, Appellee Johnnie Rushing. SPLC added Rushing as a named plaintiff in a First Amended Complaint filed on June 17, 2025. ROA.618-19. The following discussion begins with the relevant factual background and concludes with the motion practice in the district

court that culminated in the district court's decision granting class certification and declining to dismiss the case.

### A. Factual Background

1. The June 17 First Amended Complaint asserts that Rushing "is currently a defendant in eviction proceedings before Defendant Steven E. Sanders, Justice of the Peace for Ward 3, District 2 in East Baton Rouge Parish." ROA.623. It further asserts that "[t]he property from which Ms. Rushing is being evicted is located in Baton Rouge, LA, within the jurisdictional bounds of the Ward 3, District 2 Justice of the Peace Court." *Id.* The June 17 First Amended Complaint continues on to explain Rushing's alleged eviction proceedings and circumstances.

It states that she "is currently in eviction proceedings before Defendant Sanders, with a hearing scheduled for Thursday, June 19, 2025." ROA.648. According to the First Amended Complaint, Rushing was out of town when she received "a summons to appear before Defendant Sanders." ROA.648-49. It alleges that Rushing had "told her landlord she was in the process of moving, but her landlord filed the eviction case before Defendant Sanders anyway." ROA.649. It also alleges that Rushing "would like to raise [certain] defenses at her eviction

hearing" but that she "is concerned about her ability to receive a fair opportunity to fully litigate her defenses because of Defendant Sanders's conflict of interest and her lack of appeal rights." ROA.649. So she "decided to join [this] lawsuit as a plaintiff" because she "is concerned about the impact of these unfair laws on her own case, but also on other people who must appear in Defendant Sanders's court." *Id.*

The First Amended Complaint later reasserts that Rushing "is currently a tenant in eviction proceedings before a judge, Defendant Sanders, who has a personal and institutional conflict of interest in the proceeding." ROA.656; *accord* ROA.657 (also alleging that "Rushing is currently a tenant in eviction proceedings in Defendant Sanders's court and will not have full appellate rights from a judgment of eviction"). And because this is a putative class action, the First Amended Complaint seeks a class defined as "[a]ll tenants who currently or will in the future be a defendant in an eviction proceeding before the Justice of the Peace for Ward 3, District 2 in East Baton Rouge Parish, Louisiana." ROA.650.

2. Subsequent events revealed that Rushing never intended to—and never did—appear in eviction proceedings before Defendant. ROA.1249.

a. In her deposition, Rushing testified that on June 11 (six days before the First Amended Complaint was filed) she "secured a [new] place" to live. Dep. 22;[1] *accord* ROA.1261 ("I was already moving"); Dep. 10 ("I already had established a place June 11th."); Dep. 14 ("I had already secured a place"); Dep. 24 ("I had already secured a placement – a new place."). She then received a June 12 eviction notice. ROA.661; *see* ROA.666 (eviction notice). On June 13, Rushing "had someone get the keys" for her new home. Dep. 28-29; ROA.1250. And on June 18, Rushing "moved out" of her landlord's home into her new home. ROA.1258-59. Rushing testified that she "left on [her] own," Dep. 22, and that she was not "currently facing the threat of eviction at this time," Dep. 21.

Relevant here, on June 18, Rushing also filed a motion to recuse Defendant from Rushing's eviction proceeding, citing the fact that Rushing had just sued Defendant in the First Amended Complaint. ROA.1746-48. Defendant immediately recused himself on June 19. ROA.1879. Asked in her deposition about this motion, Rushing did not appear aware of the motion. Dep. 16. She also was not "aware of any

[1] Defendant has filed a motion to supplement the record on appeal with Rushing's full deposition transcript, pieces of which already appear in the electronic record on appeal. *See* ECFs 37-1, 37-2. Citations of that transcript appear in this brief as "Dep. [page number]."

judgment that recused Justice of the Peace Sanders from [her] eviction matter." Dep. 17. Finally, Rushing testified that her former landlord told her "prior to" June 19 (the scheduled eviction hearing date) that the matter was "no longer moving forward." ROA.1259.

The relevant timeline is thus as follows:

- **June 11:** Rushing establishes a new home.
- **June 12:** Her then-current landlord obtains an eviction notice.
- **June 13:** Rushing obtains the keys to her new home.
- **June 17:** Rushing files the First Amended Complaint.
- **June 18:** Rushing moves into her new home and moves to recuse Defendant.
- **June 19:** Defendant recuses himself. Also by this date, the eviction matter is closed.

b. Although Rushing testified under oath that she was moving out of her then-current landlord's home before she filed the First Amended Complaint—and that she in fact moved out on June 18, the day after she filed the First Amended Complaint—she filed a sworn declaration (dated June 16) in the district court's docket *on June 20* implying otherwise.

The declaration states: "I *have been renting* the unit at [her former landlord's address] in Baton Rouge, Louisiana, since September 16, 2023." ROA.661 (emphasis added). It states that Rushing's "rent is $1,100 per month." ROA.662. It refers repeatedly to her "landlord." ROA.662-63. It represents that Rushing, in fact, still lives in her landlord's home. *See* ROA.663 ("I am in the process of moving"). It claims that Rushing wants to make certain arguments "[i]n my eviction hearing" and is "concerned that I am going to lose my case in front of Justice of the Peace Sanders." *Id.* And it claims that Rushing is worried about being evicted. ROA.664 ("I also worry that, if I am evicted ....").

3. Discovery also revealed four material facts relevant here.

*First*, Rushing's new home as of June 18 is not in Defendant's jurisdiction today. *See* Dep. 5-6 (providing her new address); *see also* Justice of the Peace District Boundaries as of 2026 Elections, E. Baton Rouge Par., brla.gov/DocumentCenter/View/23882/JP_2026 (placing that address in Justice of the Peace District 1). That is because, in 2026, the Louisiana Legislature eliminated the existing justice of the peace districts and structure (so Defendant's "Ward 3, District 2" office no longer exists), and replaced it with a six-district system in which

Defendant now oversees District 5. *See* Act No. 950, 2026 Leg. Reg. Sess. While there is some overlap between Defendant's former and current jurisdictional boundaries, they are not coterminous. And Rushing's new address places her outside Defendant's current jurisdiction. *Contra* ECF 9-1 at 4 n.3 (SPLC's misdirection in claiming that Rushing's *former* address is located within Defendant's current and former jurisdictions).

*Second*, Rushing cannot identify anyone who has been harmed by Defendant or any other justice of the peace. At her deposition, she could not identify any relevant laws or "point to any specific action by JP Sanders under these statutes that have harmed [her] in any way." Dep. 19-20. She also testified that "she does not know anyone that's been evicted in Justice of the Peace Sanders's court." Dep. 26. Nor does she know anyone in Louisiana who has ever been evicted. *Id.*

*Third*, Rushing has agreed that she has nothing to gain in this lawsuit. Asked "[w]hat will you receive if the lawsuit is successful," she answered: "Victory for others." Dep. 45. She testified that she wishes to litigate for "[t]he fairness for other people who are facing eviction litigation." ROA.1250; *see* ROA.1260 ("This case is about the injustices of people who've been evicted and not getting fair trial.... It's important to

me because I want to advocate for people. I want to be of service and be a voice for them. Yup, to be a voice for them.”).

*Fourth*, as the district court would later recount, out of every 100 eviction cases before Defendant, approximately 48 “are dismissed at the request of the landlord.” ROA.1974-75. That is because the tenant pays his rent, moves, or takes some other satisfactory action. ROA.858.

### B. District Court Motions and Decision

The parties subsequently filed two competing motions relevant here. *First*, on September 15, 2025—three months after she filed the First Amended Complaint and then moved out of her landlord’s home—Rushing filed a motion for class certification asking the court to certify a class of “[a]ll tenants who currently or will in the future be a defendant in an eviction proceeding before the Justice of the Peace for Ward 3, District 2 in East Baton Rouge Parish, Louisiana.” ROA.725. *Second*, on October 14, 2025, Defendant filed a motion to dismiss for lack of jurisdiction, combined with his opposition to the motion for class certification. ROA.1816. The district court resolved both motions together in its 72-page September 25, 2026 order now before this Court. ROA.1969-70.

1. On jurisdiction, the district court denied Defendant's motion to dismiss, concluding that Rushing had Article III standing when she filed this suit and that this case is not moot.

As to standing, the district court reasoned that Rushing's due process "injuries arise from the conflict of interest inherent in the structure of Defendant's court," are "directly traceable to that 'flaw[ed]' system," and are "redress[able]" by "a ruling finding the structure unconstitutional." ROA.1993; *accord* ROA.2003 (reasoning that Rushing faces equal-protection violations from "the discriminatory treatment [] inherent in the constitutionally flawed system" that can be "redress[ed]" by "a decision invalidating that system").

As to mootness, although everyone agrees that Rushing's claims are moot, ROA.2005, the district court determined that her claims are "inherently transitory" (given the allegedly short lifespan of eviction proceedings) and thus exempt from the mootness doctrine, ROA.2010. In so holding, the district court relied on the decisions of "other circuits" who apply the inherently-transitory exception "even where there is no pending motion for certification" at the time that a named plaintiff's claims become moot. ROA.2009 (cleaned up) (quoting *Patton v. Fitzhugh*,

131 F.4th 383, 397 (6th Cir.), and citing other cases). The district court also concluded that it "does not matter" whether "Plaintiff was responsible for mooting her case." ROA.2011 (citation omitted).

2. On the merits of class certification, the district court determined that Rushing satisfied all the Rule 23(a) and (b)(2) factors.

a. As to Rule 23(a), the district court found (as relevant here) that Rushing satisfied the typicality and adequacy requirements. On typicality, the district court rejected Defendant's argument that "the unique mootness and standing issues Plaintiff faces" destroy typicality. ROA.2023. In the district court's view, her claims "are identical to those of the putative class members" because she faced "an inherent unconstitutional conflict of interest" in Defendant's court and "had fewer appeal rights than similarly situated tenants." ROA.2028. Similarly, on adequacy, the district court rejected Defendant's argument that Rushing "suffered no injury" and mooted her own case, rendering her an inadequate representative. ROA.2029. The district court reiterated its view that Rushing has standing and that the inherently-transitory exception avoided the obvious mootness problem—thus rendering Rushing an adequate representative. ROA.2031-32.

b. As to Rule 23(b)(2), the district court rejected Defendant's overbreadth and ascertainability arguments aimed at the fact that the certified class encompasses wide swaths of unidentified individuals who will never be harmed by the challenged Louisiana laws. ROA.2036–37. In the district court's view, "the individual circumstances of the class members" are irrelevant; all that matters is "the overall alleged unconstitutional structure of Defendant's justice of the peace court." ROA.2038.

Based on these findings, the district court certified the class Rushing requested: "All tenants who currently or will in the future be a defendant in an eviction proceeding before the Justice of the Peace for Ward 3, District 2 in East Baton Rouge Parish, Louisiana." ROA.2040.

## SUMMARY OF THE ARGUMENT

I. The Court should begin and end this case with the lack of Article III jurisdiction. Rushing has no Article III standing because, before she filed the First Amended Complaint, she had already solidified plans to moot her eviction proceedings by moving out of her landlord's home. That is the opposite of certainly impending injury from Louisiana's eviction laws. And insofar as Rushing proclaims her desire to represent the

interests of others who might face eviction proceedings, that sort of concerned-bystander claim to standing is squarely foreclosed by Supreme Court precedent.

Even if Rushing had Article III standing, she could not avoid the obvious mootness problem in this case. The district court tried to save her with the inherently-transitory exception to mootness. But this Court's *Fontenot* decision bars the use of that exception where, as here, a plaintiff failed to file a motion for class certification before his claims became moot. Moreover, this Court has declined to extend the exception where, as here, a plaintiff's own actions caused the mootness problem—and in any event, the full eviction and appeals process is not inherently transitory. Rushing thus has no shelter from mootness.

All this is underscored by the additional mootness problem caused by the Legislature's abolition of Defendant's former office: This official-capacity action is asserted against an office that no longer exists—and if Rushing tried to make Defendant's new office a defendant, that would illustrate the absence of any Article III case or controversy. For Rushing does not live within the jurisdictional bounds of Defendant's new office.

II. Although the Article III defects are sufficient to order decertification and dismissal of this suit, it bears noting that Rushing also fails a standard Rule 23 analysis. The numerosity element is not satisfied because the certified class—based on an office that no longer exists—is entirely empty. The typicality and adequacy elements are not satisfied because Rushing faces a murderer's row of justiciability problems that will dominate any further litigation. And the ascertainability and tailoring problems speak for themselves: The class purportedly includes any person in the world who may someday find themselves in Defendant's court—including the approximately 50% whose eviction matters are dismissed upon a landlord's request and thus will suffer none of the alleged constitutional injuries identified in the First Amended Complaint. This is not the stuff of Rule 23 and Article III. At a minimum, therefore, decertification is warranted.

## STANDARD OF REVIEW

"This [C]ourt reviews the certification of a class for abuse of discretion," but "review[s] *de novo* whether the district court applied the correct legal standard to grant certification." *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 304 (5th Cir. 2009). The Court reviews "questions of

federal jurisdiction"—including standing and mootness—"de novo." *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 831 (5th Cir. 2023).

## ARGUMENT

### I. THERE IS NO ARTICLE III JURISDICTION.

The district court's lack of Article III jurisdiction begins and ends this appeal. *See, e.g.*, *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020) ("[I]f the class representative lacks standing, then there is no Article III suit to begin with—class certification or otherwise."). Specifically, (A) Rushing has no Article III standing, and (B) even if she did, this case is moot. That requires both decertification of the class and dismissal of this lawsuit.

#### A. Rushing Lacks Article III Standing.

Start with Rushing's "burden of establishing standing." *See El Paso Cnty. v. Trump*, 982 F.3d 332, 338 (5th Cir. 2020). "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper*, 568 U.S. at 409 (citation omitted). An imminent injury is an injury that "is *certainly* impending." *Id.* (citation omitted). Indeed, the Supreme Court has "repeatedly reiterated that

'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Id.* (citation omitted); *see All. for Hippocratic Med.*, 602 U.S. at 381 ("[W]hen a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury."). Rushing faced no such injury when she filed the First Amended Complaint.

1. The two injuries Rushing alleged—and that the district court credited—are a "conflict of interest inherent in the structure of Defendant's court" (the alleged due process violation), ROA.1993, and "discriminatory treatment [] in the constitutionally flawed [eviction] system" (the alleged equal protection violation), ROA.2003.

But Rushing was never going to suffer those injuries because she was never going to be evicted or appear in an eviction proceeding before Defendant. By her telling, before she filed the First Amended Complaint on June 17, she "was already moving" out of her landlord's home. ROA.1261. She had secured her new home on June 11, and she had the keys by June 13. Dep. 22, 28-29; ROA.1250. She also apparently planned to, and in fact did, move out of her landlord's home the day after she filed the First Amended Complaint. ROA.1258-59. And she (or at least her

counsel) planned to (and did) file a motion to recuse Defendant the day after she filed the First Amended Complaint, ensuring that she would never appear in front of Defendant. ROA.1746-48; ROA.1879.

All this confirms that Rushing faced no "*certainly* impending" injuries from eviction proceedings before Defendant that would never unfold. *Clapper*, 568 U.S. at 409 (citation omitted).[2] Indeed, she faced no injuries at all. That ends this case.

2. Rushing has effectively admitted that she suffered no injuries and stands to gain nothing from this suit. Instead, she has justified her pursuit of this case and class certification on the ground that she wishes to litigate for "[t]he fairness for other people who are facing eviction litigation." ROA.1250; *see* ROA.1260 ("This case is about the injustices of people who've been evicted and not getting fair trial.... It's important to me because I want to advocate for people. I want to be of service and be a voice for them. Yup, to be a voice for them."). That wish does not create

[2] This defect likewise can be understood as a failure to show traceability—Rushing was never going to suffer harm from *this Defendant*. *See All. for Hippocratic Med.*, 602 U.S. at 382 ("The plaintiff must also establish that the plaintiff's injury likely was caused or likely will be caused *by the defendant's conduct*." (emphasis added)). Or a failure to show redressability—a declaration or injunction *against Defendant* would have never benefited Rushing because she faced no injury from Defendant. *See id.* at 381 ("If a defendant's action causes an injury, enjoining the action ... will typically redress that injury.").

Article III standing. *See All. for Hippocratic Med.*, 602 U.S. at 381 ("By requiring the plaintiff to show an injury in fact, Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action."). Indeed, "[t]he injury in fact requirement prevents the federal courts from becoming a 'vehicle for the vindication of the value interests of concerned bystanders.'" *Id.* at 382 (citation omitted). Exactly so here. The absence of Article III standing ends this case.

### B. Even If Rushing Had Standing, This Case Is Moot.

The result would be the same even if the Court assessed this case under a mootness framework. Everyone agrees that Rushing's claims are moot: By her own admission, Dep. 21, she faces no eviction proceedings, and certainly none before Defendant because she does not live in his jurisdiction. *See Fontenot*, 777 F.3d at 747 ("Because there remains no live controversy between the parties ..., the injunction [plaintiffs] seek would be meaningless."). So, the only question is whether Rushing could satisfy a mootness exception. The answer is no. She and the district court exclusively relied on the inherently-transitory exception, but (1) this Court's precedent squarely forecloses that attempt and (2) she could not

satisfy the exception even if it were otherwise available. And if that were not clear enough, (3) the Louisiana Legislature's abolition of Defendant's former office would itself confirm that this case is moot.

1. The district court was wrong to apply the inherently-transitory exception because this Court has foreclosed that move. This exception excuses mootness in circumstances where "the challenged conduct [is] effectively unreviewable, because no plaintiff possesse[s] a personal stake in the suit long enough for litigation to run its course." *Fontenot*, 777 F.3d at 749 (citation omitted).

But *Fontenot* could not be clearer in barring the invocation of that exception here. As here, the putative class plaintiffs' claims became moot before they filed their motion for class certification. *Id.* at 746–47. Like Rushing, they attempted to invoke the inherently-transitory exception to avoid the mootness problem, but this Court rejected that attempt. The Court emphasized that "no certification motion was [] pending" when the plaintiffs' claims became moot—and that was fatal. *Id.* at 751. "[T]he plaintiffs could have filed a class certification motion against [the defendant], and indeed could have filed the motion simultaneously with

the filing of their first amended complaint." *Id.* They did not. Thus, "when [their claims] became moot, so did the class action case." *Id.*

*Fontenot* squarely controls here. There is no dispute that Rushing filed her motion for class certification three months after her claims became moot. *See* ROA.725. Put in *Fontenot*'s terms, "no certification motion was [] pending" when her claims became moot. 777 F.3d at 751. Accordingly, *Fontenot* bars Rushing from invoking the inherently-transitory exception.[3] And that ends this case because Rushing and the district court exclusively relied on that exception to keep this case alive.

In reaching its contrary conclusion, the district court invoked the decisions of "other circuits" who apply the inherently-transitory exception "even where there is no pending motion for certification" at the time that a named plaintiff's claims become moot. ROA.2009 (cleaned up) (quoting *Patton*, 131 F.4th at 397). But *Fontenot* alone controls this question in *this circuit*. That ends the mootness analysis.

[3] It bears noting that the facts here are even stronger (for Defendant) than the facts in *Fontenot*: That case involved a defendant who intentionally attempted to "pick off" named plaintiffs by mooting their claims within a matter of days of being sued. 777 F.3d at 746–47. Still, this Court held that they could not invoke the inherently-transitory exception. By contrast, no such facts exist here: Rushing herself destroyed any claim to an Article III case or controversy by leaving her landlord's home and also forcing Defendant's recusal. This is thus an *a fortiori* case from *Fontenot*.

2. Even if *Fontenot* did not foreclose Rushing's grasp at the inherently-transitory exception, she could not satisfy it on its own terms—both (a) because she caused the mootness problem herself and (b) because the controversy is not inherently transitory.

a. This Court has previously rejected a plaintiff's invocation of the inherently-transitory exception (coupled with "the relation back doctrine") where the plaintiff's "*own* actions, not the [defendant's], mooted his claim." *Gilbert*, 324 F.3d at 390 n.11. That same rejection would be appropriate here. Before she filed the First Amended Complaint, Rushing had plans to moot the very eviction proceedings that she seeks to challenge: She would simply move out of her landlord's home "on [her] own." Dep. 22. When she actually made the move some 24 hours after filing the First Amended Complaint, she ensured that she could never be subject to eviction proceedings or evicted—because she was already gone. Her unilateral action thus destroyed any (alleged) Article III case or controversy over the constitutionality of justice of the peace operations and procedures that she would never encounter.

Earlier in this litigation, Rushing tried to deflect the Court's attention away from her unilateral action and to the fact that Defendant

recused himself in her eviction matter. *See* ECF 9-1 at 13 ("Defendant's own actions mooted Ms. Rushing's claims when he recused himself from her eviction case the day after she filed her lawsuit."). That is specious. For one thing, it ignores that the recusal itself did not end the eviction matter, which supplied the putative Article III case or controversy; Rushing's moving out of her landlord's home did. For another thing, Rushing herself forced Defendant's recusal by filing her recusal motion—in other words, she caused any claimed mootness issue raised by the recusal. And that backs her into *Gilbert* again. So, the inherently-transitory exception would remain unavailable to her.

b. That is doubly true because an eviction proceeding is not inherently transitory to begin with. As the First Amended Complaint acknowledges, a losing party before a justice of the peace has a right to appeal. ROA.629–33. Rushing complains about the nature of that appellate process, but there is no dispute that it exists—nor can there be any dispute that this extended eviction controversy would remain live long enough at least to file a motion for class certification, if not obtain a merits adjudication. Rushing simply short-circuited the process (and destroyed any case or controversy) by moving out of her landlord's home.

That independently forecloses her invocation of the inherently-transitory exception.

3. These mootness problems are compounded by the fact that Defendant's former office—the subject of the First Amended Complaint—no longer exists. This is an official-capacity case. *See* ROA.623 ("[Defendant] is sued in his official capacity as the Justice of the Peace for Ward 3, District 2 in East Baton Rouge Parish."). Accordingly, this suit is against not Defendant but his former office—the office of Justice of the Peace for Ward 3, District 2 in East Baton Rouge Parish. *See, e.g.*, *Scott v. Vital Core Strategies*, 2025 WL 471110, at *3 (5th Cir. Feb. 12, 2025) ("[A] suit against a [municipal] official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989))) (second alteration in original).

That matters because there is no question that the office of Justice of the Peace for Ward 3, District 2 no longer exists. The Louisiana Legislature did away with it in Act 950, and adopted a six-district map instead for East Baton Rouge Parish. This suit against that non-existent office is thus plainly moot. *See, e.g.*, *Judicial Watch, Inc. v. Nat'l Energy*

*Policy Development Grp.*, 219 F. Supp. 2d 20 (D.D.C. 2002) (finding certain injunctive demands against the defendant "moot" because the defendant "no longer exists"); *New York v. Trump*, __ F. Supp. 3d __, 2026 WL 2858727, at *4 (S.D.N.Y. Sept. 23, 2026) ("[T]he automatic dissolution of DOGE, as contemplated by the Executive Order, renders Plaintiffs' Access Claims moot."); *Cooperative Dist. of Hou. Cnty-Country Crossing Project v. Tyson*, 2011 WL 336466, at *1 (M.D. Ala. Jan. 31, 2011) ("Because the plaintiffs seek only injunctive relief in this case and because the Task Force, the entity which the plaintiffs claim violated their rights, no longer exists, this case is now moot.").

Rushing has no answer to this problem. She previously suggested that this Court could simply "automatically substitute[]" Defendant's new office for his old office under Federal Rule of Civil Procedure 25(d). ECF 9-1 at 7, 10–11. She misunderstands Rule 25(d). That Rule allows the automatic substitution of a new *officeholder* for an old *officeholder* in a suit against the office itself. *See, e.g.*, *Odonnell v. Salgado*, 913 F.3d 479, 482 (5th Cir. 2019) ("The rules effectuating automatic substitution of public officers were specifically designed to prevent suits involving public officers from becoming moot due to personnel changes." (citing

Rule 25(d))) (citation omitted); *see also* Fed. R. App. P. 43(c) ("When a public officer who is a party to an appeal or other proceeding in an official capacity dies, resigns, or otherwise ceases to hold office, the action does not abate. The public officer's successor is automatically substituted as a party."). It has no relevance in a case like this where the office that is the defendant in the action has itself ceased to exist.

One additional reason why this substitution could not work is that it would erect another Article III problem: It would render Defendant's new office (Justice of the Peace District 5) the real defendant in this case, but, as noted above, Rushing does not live in District 5; she lives in District 1. Attempting to bring Defendant's new office into this suit would thus accentuate the absence of any Article III case or controversy.

* * *

In sum, the absence of Article III jurisdiction requires both the reversal of class certification and the dismissal of this lawsuit.

## II. THE DISTRICT COURT ERRONEOUSLY GRANTED CLASS CERTIFICATION.

The Court could reach the same result through a standard Rule 23 analysis—and, in an ordinary Rule 23(f) appeal raising Article III concerns only about *the class*, it would be appropriate to begin and end

with Rule 23 if possible. *See Flecha v. Medicredit, Inc.*, 946 F.3d 762, 768–69 (5th Cir. 2020) ("[T]he Supreme Court has repeatedly instructed that we should first decide whether a proposed class satisfies Rule 23, before deciding whether it satisfies Article III—and that there is no need to answer the latter question if the class fails under the former."). But where "it is the *class representative* who presents a standing problem, then *that* standing issue must be addressed first, prior to deciding class certification." *Id.* at 769. "After all, if the class representative lacks standing, then there is no Article III suit to begin with—class certification or otherwise." *Id.* Put otherwise, if a named plaintiff "never had standing," then "the class claims are moot." *Gilbert*, 324 F.3d at 390.

That is the case here. Resolution of this case on any of the above Article III grounds, *see supra* Section I, requires not only decertification of the class but dismissal of this suit. But decertification of the class is independently warranted because (A) the class is empty, (B) even if it were not empty, Rushing cannot satisfy the typicality and adequacy requirements, and (C) the certified class is unlawfully overbroad.

### A. The Class Is Empty.

At a minimum, decertification is warranted because the existing class of "[a]ll tenants who currently or will in the future be a defendant in an eviction proceeding before the Justice of the Peace for Ward 3, District 2 in East Baton Rouge Parish, Louisiana," ROA.2040, covers no one. *Cf.* Fed. R. Civ. P. 23(a)(1) (requiring a class to be "numerous"). That is because, as discussed above, that office no longer exists. No individual is thus "currently" in an eviction proceeding before that office, nor will any "future" individual appear in an eviction proceeding before that office. That is a textbook Rule 23(a)(1) problem just as much as it is a mootness problem.

### B. Even If the Class Were Not Empty, Rushing Is Atypical and Inadequate.

But even if the Court hypothetically could reconfigure the class to cover Defendant's new District 5, the typicality and adequacy requirements of Rule 23(a) would bar certification. "[T]he claims or defenses of the [named plaintiff must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). And the named plaintiff must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "A class representative is 'not adequate or typical if it is subject to a

unique defense that threatens to play a major role in the litigation.'" *Golan v. Veritas Entertainment, LLC*, 788 F.3d 814, 821 (8th Cir. 2015) (citation omitted); *accord Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("Several courts have held that 'class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.'" (collecting citations)).

For all the reasons expressed above, that is Rushing in spades. She planned to move out of her landlord's home before she even joined this lawsuit; she moved out the day after she filed the First Amended Complaint; and by filing a recusal motion, she moved her case out of Defendant's court—all of which destroyed any claim to an Article III case or controversy. And now she does not even live within Defendant's jurisdiction. If Rushing somehow survived the motion to dismiss today, she would lose this case at final judgment because of the murderer's row of justiciability problems, which will dominate throughout the litigation. That is the definition of an atypical and inadequate representative.

### C. The Class Is Unlawfully Overbroad.

Finally, the certified class is unlawful because it sweeps far too broadly. The class captures everyone who will "be a defendant in an eviction proceeding." ROA.2040. As the district court recounted, however, out of every 100 eviction cases before Defendant, approximately 48 "are dismissed at the request of the landlord." ROA.1974-75. That is because the tenant pays his rent, moves, or takes some other satisfactory action. ROA.858. For at least approximately 50% of the certified class, therefore, the tenants will never be subject to the alleged constitutional defects that Rushing seeks to challenge in this case. That is both a Rule 23(b)(2) problem and an Article III problem.

It is a Rule 23(b)(2) problem principally because "certification under [R]ule 23(b)(2) is appropriate only if members of the proposed class would benefit from the injunctive relief they request." *In re Monumental Life Ins.*, 365 F.3d 408, 416 (5th Cir. 2004). Early on, this Court said that certification is "inappropriate" at least where "only a negligible proportion of proposed class members were properly seeking injunctive relief." *Id.* But more recently, the Supreme Court has said that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment

would provide relief *to each member of the class*." *Jennings v. Rodriguez*, 583 U.S. 281, 313 (2018) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011)) (emphasis added). And that is the fatal flaw here: By the district court's own account, at least half of the certified class will never need or obtain relief because they will never suffer an injury to begin with. The certified class thus squarely violates Rule 23(b)(2) as interpreted by the Supreme Court.

This also is an Article III problem in two respects. *First*, the Supreme Court has said that "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citation omitted); *see Mirabelli v. Bonta*, 607 U.S. 492, 498 (2026) (per curiam) (concluding that each member of a Rule 23(b)(2) class very likely had standing to obtain injunctive relief). If Article III thus would prohibit the district court from granting relief to approximately 50% of the certified class, then it is difficult to see how Article III could tolerate a district court certifying that class in the first place. After all, the mere act of certification immediately exposes a defendant to protracted litigation, increased attorney's fees and costs (potentially including the plaintiff's

own fees and costs), and heightened settlement pressure, *see Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 296 n.7 (2014) (Thomas, J., concurring in the judgment); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008); *see also Swales v. KLLM Transport Servs., L.L.C.*, 985 F.3d 430, 436 (5th Cir. 2021)—all perks of an unlawfully oversized class, half of which could never obtain relief at final judgment consistent with Article III.

*Second*, insofar as the certified class purports to cover all *future* individuals who might find themselves in eviction proceedings, that concept, too, is difficult to square with Article III. By definition, such a person who in 20 years lands in eviction proceedings has no Article III standing today or for the next couple of decades. That person might not even be born as of today—or may currently live in Australia. How, then, can a federal court claim the Article III authority to sweep that person into this class? To be sure, the notion of future class members is not foreign in class-action litigation, but, as far as Defendant can tell, this Court has never fully explained how Article III permits a federal court to bind and benefit individuals that are unidentifiable unless and until they happen to trigger a condition months or years down the road that

magically brings them within a certified class. *Cf. Refuge & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin*, 174 F.4th 81, 123–27 (D.C. Cir. 2026) (Walker, J., concurring in part and dissenting in part) (outlining extensive problems with this view).[4] There is no sufficient Article III answer.

* * *

Whether on Article III grounds or Rule 23 grounds (or both), class certification in this case was plainly erroneous—and the case should have been dismissed.

## CONCLUSION

For these reasons, the Court should reverse class certification and render judgment dismissing this case.

[4] Note that this problem equally can be characterized as an ascertainability problem—wide swaths of the certified class are quite literally unknowable (and may not yet exist) unless and until they happen to appear on an eviction docket. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 640 (5th Cir. 2012) ("[I]n order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." (citation omitted)). Or a failure to articulate a precise class definition. *See In re Monumental Life Ins.*, 365 F.3d at 413 ("A precise class definition is necessary to identify properly 'those entitled to relief, those bound by the judgment, and those entitled to notice.'" (citation omitted)).

Respectfully submitted,

Dated: November 12, 2026

ELIZABETH B. MURRILL
Attorney General of Louisiana

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA
Solicitor General

TANIKA L. STARKS
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 406-1864
AguinagaB@ag.louisiana.gov

*Counsel for Defendant-Appellant*

## CERTIFICATE OF SERVICE

I certify that on November 12, 2026, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this supplemental brief complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,073 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook, except for footnotes using 12-point font) using Microsoft Word 365 (the same program used to calculate the word count).

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

Dated: November 12, 2026